UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BPI BRIGHT POWER, INC.,<br><br>        Plaintiff,<br><br>      v.<br><br>UMPQUA HOLDING CORPORATION D/B/A UMPQUA BANK, et al.,<br><br>        Defendants. | Case No. 22-cv-03285-JD<br><br>**ORDER RE MOTIONS TO DISMISS** |

Plaintiff BPi Bright Power Inc. alleges in a second amended complaint (SAC) that scammers impersonated a business partner and duped BPi into transferring more than $150,000 to the scammers' bank account. Dkt. No. 42. ¶¶ 2-8. BPi sued its bank, defendant Umpqua Holding Corporation, and the scammers' bank, defendant Wells Fargo N.A., for failing to prevent the fraud. *Id.* ¶¶ 17-30. The claims in the SAC are negligence and breach of implied contract against Umpqua, and claims for negligence and breach of Section 11207 of the California Commercial Code against Wells Fargo.

Umpqua and Wells Fargo ask to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 43, 44. The parties' familiarity with the record is assumed, and the claims against Umpqua and Wells Fargo are dismissed with leave to amend.

## LEGAL STANDARDS

The standards that govern a Rule 12(b)(6) motion to dismiss are well-established, and are incorporated here. *See McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). In pertinent part, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff

1  must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
2  *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads
3  factual content that allows the court to draw the reasonable inference that the defendant is liable
4  for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550
5  U.S. at 556). Determining whether a complaint states a plausible claim for relief is a "context-
6  specific task that requires the reviewing court to draw on its judicial experience and common
7  sense." *Id*. at 679. "Because this diversity case arises in California, California law applies."
8  *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991).

## DISCUSSION

BPi's common law claims against Umpqua are displaced by division 11 of the California Commercial Code, which codifies Article 4A of the Uniform Commercial Code. *See* Cal. Com. Code §§ 11101, *et seq*. Division 11 applies to "funds transfers," and provides "a comprehensive body of law to govern the rights and obligations resulting from wire transfers." *Zengen, Inc. v. Comerica Bank,* 41 Cal. 4th 239, 253 (2007) (citation omitted). Division 11 displaces common law claims based on allegedly unauthorized funds transfers "in two specific areas: (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11." *Id*.

The transactions alleged in SAC are funds transfers within the meaning of division 11. Division 11 defines a "funds transfer" as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Cal. Com. Code § 11104(a). A "payment order" refers to "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." *Id.* § 1103(a)(1). BPi's requests for Umpqua to wire funds to the scammers' account were payment orders. Dkt. No. 42 ¶¶ 4, 8. BPi was the sender, Umpqua was the receiving bank, the scammers' bank account was the beneficiary, and Wells Fargo was the beneficiary bank. *See id.* Umpqua "accepted" BPi's payment orders by executing them. *See id.*; *see also* Cal. Com. Code § 11209(a).

2

The SAC alleges that Umpqua was negligent and breached its implied contract to protect BPi because it executed BPi's payment orders despite being aware of "red flags" regarding the scammers' activities. *See* Dkt. No. 42 ¶¶ 21-25. In effect, BPi says that Umpqua is at fault for accepting BPi's payment orders. *See id.* Division 11 specifically addresses when a receiving bank may be liable for accepting a payment order. *See* Cal. Com. Code § 11212; *Chino Com. Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1174-75 (2010) ("[T]he Bank's liability for that acceptance is limited, to its liability, if any, under article 4a.") (citing Cal. Com. Code §§ 11209, 11212). Consequently, the SAC's common law claims against Umpqua are displaced by division 11, and are dismissed. *See Chino*, 190 Cal. App. 4th at 1174-75.; *see also Zengen*, 41 Cal. 4th at 253.

So too in similar part for the claims against Wells Fargo. For the allegation that Wells Fargo violated Section 11207 of the California Commercial Code, the section provides a safe harbor from liability for beneficiary banks that process wire transfers based on the beneficiary account number provided in the transfer instructions. *See* Cal. Com. Code § 11207(b). The safe harbor applies so long as the beneficiary bank "does not know that the beneficiary's name and account number refer to different persons." *TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004); *see also* Cal. Com. Code § 11207(b)(1); *Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A.*, No. 21-55146, 2022 WL 171937, at *1 (9th Cir. Jan. 19, 2022) (unpublished). The SAC does not allege any facts indicating that Wells Fargo had "actual knowledge" of a discrepancy between BPi's intended beneficiary and the recipient of the funds. *See TME Enters., Inc.*, 124 Cal. App. 4th at 1031.

The SAC also has not stated a plausible negligence claim against Wells Fargo. It does not allege that BPi had any banking relationship with Wells Fargo. This is a problem for BPi because under California law, "[a]bsent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49 Cal. App. 4th 472, 479, 481-82 (1996) (no duty to protect noncustomers when opening accounts for alleged wrongdoers); *see also Kurtz-Ahlers, LLC v. Bank of America, N.A.*, 48 Cal. App. 5th 952, 960 (2020) (no duty to protect noncustomers from tortious conduct of customers). The SAC does

3

not include enough factual allegations of "sufficiently suspicious" circumstances for the Court to conclude that this is one of the "extraordinary and specific" situations where Wells Fargo might owe a duty of care to BPi.  *See Software Design*, 49 Cal. App. 4th at 479-80.

## CONCLUSION

BPi may file an amended complaint consistent with this order by May 12, 2023.  A failure to meet this deadline will result in dismissal with prejudice under Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated:  April 19, 2023

JAMES DONATO
United States District Judge